```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

SAMUEL J. HARRIS,

                            Plaintiff,

       -vs-                       **No. 1:14-CV-00810 (MAT)**
                                        **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                            Defendant.
_____

**I.   Introduction**

    Represented by counsel, Samuel J. Harris ("plaintiff") brings this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for supplemental security income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Commissioner's motion is granted.

**II.  Procedural History**

    The record reveals that in February 2010, plaintiff (d/o/b September 27, 1963) applied for SSI, alleging disability as of March 1, 2002 due to blindness in the right eye, depression, anxiety, and high blood pressure. After his application was denied, plaintiff requested a hearing, which was held before administrative

law judge Stanley A. Moskal, Jr. ("the ALJ") on October 19, 2011. The ALJ issued an unfavorable decision on November 14, 2011.

Plaintiff appealed that decision, and the Appeals COuncil remanded the case for reconsideration. In its April 26, 2013 order, the Appeals Council found various errors in the ALJ's decision, and directed that the ALJ (1) obtain additional evidence in order to complete the administrative record; (2) evaluate the severity of plaintiff's drugs addiction and alcoholism at step two of the sequential evaluation process; (3) "[g]ive further consideration to [plaintiff's] maximum [RFC] and provide appropriate rational with specific references to evidence of record in support of the assessed limitations"; (4) give further consideration to Dr. Renee Baskin's opinion, and explain the weight given to her opinion, requesting additional evidence or clarification if necessary; and (5) obtain vocational expert ("VE") testimony "to clarify the effect of the assessed limitations on [plaintiff's] occupational base." T. 105-06.

On remand, the ALJ held another hearing on September 9, 2013. The ALJ issued a second unfavorable decision on September 12, 2013. The Appeals Council denied review of that decision. This timely action followed.

**III. Medical Evidence**

    **A.   Treating Sources**

During the relevant time frame, plaintiff treated with Dr. Donald Nenno, who recorded a diagnosis of moderate to severe tricompartment osteoarthritis in the left knee. Plaintiff's condition improved with steroid injections. The ALJ requested a medical source statement from Dr. Nenno, which Dr. Nenno declined to provide. Plaintiff also treated with Community Health Center of Niagara for primary care, and physical examinations were essentially normal, with the exception of pain and limited range of motion in the left knee, as well as monocular vision due to a retinal tear in the right eye.

Plaintiff attended counseling at Niagara County Mental Health ("NCMH") from approximately April 2009 through May 2013. During much of that time period, plaintiff also treated at Horizon Health Services ("Horizon"), as a result of a 2009 court referral for chemical dependency. Treatment notes reflect diagnoses of mood disorder, not otherwise specified ("NOS"), antisocial personality disorder, and polysubstance abuse disorder in early partial remission, and document complaints of anxiety, difficulties with anger management, and ongoing substance abuse issues. Mental status examinations were consistently noted as essentially normal, with the exception of anxious affect. Treatment focused on cognitive behavioral therapies focused toward managing anger issues, and

plaintiff generally reported abstinence from substance abuse, but occasionally admitted to relapses. Over the course of his treatment, his global assessment of functioning ("GAF") score increased from 56 (indicating serious symptoms) in 2010 to 65 (indicating mild symptoms) in 2012. See Am. Psych. Ass'n, Diagnostic and Statistical Manual of Mental Disorders-Text Revision ("DSM-IV-TR"), at 34 (4th ed., rev. 2000).

In a consulting psychiatric evaluation dated March 2010, which was requested by plaintiff's counselor at NCMH, Dr. Dham Gupta diagnosed plaintiff with mood disorder, NOS, and "poly substance dependence disorder in partial remission." T. 333-34. Plaintiff reported to Dr. Gupta that he "used to abuse alcohol and crack cocaine on a regular basis," but "[r]ecently he [had] been only drinking." T. 333. Plaintiff had no significant past psychiatric treatment, denied manic symptoms but reported a "problem with anger management," and denied paranoia and hallucinations, but "admit[ted] that because of his treatment history he is always paranoid about others." Id. No past diagnosis of mental disorder was noted, but Dr. Gupta prescribed medication "[g]iven his history of anxiety and some depression and anger and difficulty sleeping." Id.

Plaintiff continued to treat with Dr. Gupta. In May 2010, Dr. Gupta noted that plaintiff was "very pleased with how the medications [had] been working." T. 499. He reported that he had

4

been sober for two months and had abstained from crack cocaine "for years," and denied symptoms of mood swings and depression. Id. In September 2010, Dr. Gupta noted that plaintiff had missed an August appointment and reported running out of medications. Plaintiff reported feeling depressed and losing sleep, and "admit[ted] to drinking two beers recently and he knows he shouldn't have done that." T. 500. In December 2010, plaintiff again reported being off of medication, and stated that he was having problems with anger management. In May 2011, plaintiff presented as "stable on his current medication," and reported "finishing up at Horizons for cocaine and alcohol dependency," stating that he had been able to maintain sobriety. T. 506. In July 2011, plaintiff continued to be "quite stable." T. 509. Dr. Gupta noted that plaintiff "still [had] angry impulses but [had] been able to contain them and [was] sleeping without difficulty." Id.

In November 2012, plaintiff reported a recent arrest for driving while intoxicated, stating that he had drank two 24-ounce beers and a shot before driving. He reported that he drank "occasionally[,] [one to two] times a month, but not in excess." T. 649-50. In May 2013, a urine toxicology report came back positive for cocaine metabolite.

    **B.  Consulting Sources**

Dr. Renee Baskin, Ph.D., completed a consulting examination in April 2010. Plaintiff reported that he had "a history of relatively

short term jobs due to conflicts with coworkers, supervisors, and some substance abuse problems." T. 353. Plaintiff reported that he experienced symptoms of anxiety, fatigue/loss of energy, and social withdrawal. According to Dr. Baskin, "[s]ymptoms reported by [plaintiff] which may be due to alcohol dependence or withdrawal include dysphoric mood, insomnia, irritability, fatigue/loss of energy, [and] palpitations." T. 354. Plaintiff's mental status examination was essentially normal, except that Dr. Baskin noted his cognitive functioning to be in the borderline range. Dr. Baskin opined that plaintiff would have "minimal to no limitations being able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, moderate limitations being able to maintain a regular schedule, learn new tasks, perform complex tasks, make appropriate decisions, relate adequately with others and appropriately deal with stress." T. 356. She diagnosed plaintiff with impulse control disorder, NOS, bipolar disorder, NOS, alcohol dependence, and polysubstance dependence, reported in remission, and noted a guarded prognosis, considering plaintiff's "history and current symptoms." Id.

In April 2010, consulting physician Dr. Samuel Balderman diagnosed plaintiff with polysubstance abuse, history of retinal problem in the right eye, degenerative disease of the left knee, and hypertension. He noted that plaintiff had "essentially

monocular vision," and opined that plaintiff had "mild to moderate limitation in kneeling and climbing due to left knee pain," that plaintiff's "blood pressure require[d] better control, and that "substance abuse [was] still an active issue." T. 361.

In June 2010, Dr. M. Marks completed a psychiatric review technique form, in which Dr. Marks found that plaintiff had mild restriction in activities of daily living ("ADLs"); moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation. Dr. Marks also completed a mental residual functional capacity ("RFC") assessment, which opined that plaintiff had no significant limitations, with the exception of moderate limitations in maintaining attention and concentration for extended periods, completing a normal workday and workweek without interruptions from psychologically-based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; and responding appropriately to changes in the work setting.

**IV. The ALJ's Decision**

The ALJ followed the well-established five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had never engaged in substantial gainful activity. At step two, the ALJ found that plaintiff had the

following severe impairments: history of retinal tear status post surgical correction, alcohol and drug abuse disorder, impulse control disorder, bipolar disorder, and anxiety disorder. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. In assessing the effects of plaintiff's mental impairments on his functioning and applying the "B" criteria of the listings, the ALJ concluded that plaintiff had mild restrictions in activities of daily living ("ADLs"), and moderate difficulties in social functioning and maintaining concentration, persistence or pace. The ALJ found that plaintiff had no prior episodes of decompensation.

Before proceeding to step four, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) with the following limitations: plaintiff was limited to lifting and carrying ten pounds; occasionally lifting and carrying up to 20 pounds; sitting, standing, and walking for six hours in an eight-hour workday; pushing and pulling up to 20 pounds occasionally; occasionally kneeling, balancing, crawling, crouching, and stooping, but never climbing ladders, ropes, or scaffolds; plaintiff was limited to monocular vision; plaintiff must avoid concentrated exposure to hazardous machineries; plaintiff had moderate limitations interacting with the general

public, coworkers, and supervisors, learning new tasks, making decisions for simple work-related tasks, and appropriately dealing with stress.

At step five, the ALJ determined that, considering plaintiff's age, education, work experience, and RFC, no jobs existed in significant numbers in the national economy that plaintiff could perform. However, pursuant to the drug or alcohol abuse ("DAA") standards, see 42 U.S.C. § 1382c(a)(3)(J); 20 C.F.R. § 416.935, the ALJ went on to consider the effect of plaintiff's alcohol and drug abuse on the finding of disability, and concluded that if plaintiff stopped substance abuse, the remaining impairments would be severe, but plaintiff would have the RFC to perform light work with the same physical limitations as noted above but without the above-listed nonexertional limitations. Accordingly, the ALJ found plaintiff not disabled.

**V.  Discussion**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhard, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

Plaintiff contends that the ALJ's decision should be reversed and remanded for calculation of benefits, contending (1) the ALJ misrepresented the severity of plaintiff's substance abuse disorder; and (2) the ALJ's physical RFC findings are not supported by substantial evidence.

### A.   Plaintiff's Substance Abuse Disorder

Plaintiff contends that this case should be reversed and remanded solely for the calculation of benefits, arguing that plaintiff's mental impairments rendered him disabled regardless of the status of his substance abuse, which he contends was in remission. The issue is whether substantial evidence supports the ALJ's conclusion that, but for his substance abuse disorder, plaintiff would have had no nonexertional impairments. Plaintiff had the burden of proving that his substance abuse was not a contributing factor material to the disability determination. See Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 123 (2d Cir. 2012).

The ALJ's decision is supported by substantial evidence. First, Dr. Baskin's opinion, to which the ALJ gave great weight, concluded that plaintiff would have "minimal to no limitations being able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, moderate limitations being able to maintain a regular schedule, learn new tasks, perform complex tasks, make appropriate decisions, relate adequately with others

and appropriately deal with stress." T. 356. The ALJ incorporated all of these limitations into his RFC assessment. Dr. Baskin's opinion also noted that nearly *all* of plaintiff's reported symptoms "may be due to alcohol dependence or withdrawal." T. 353. Contrary to plaintiff's contention, Dr. Baskin did not find that plaintiff was "clean and sober" (Doc. 12-1 at 14) and in remission from substance abuse; she diagnosed him with active alcohol dependence, and polysubstance dependence, "reported in remission." T. 356. Dr. Baskin's opinion alone was enough to provide substantial evidence for the ALJ's opinion (see Monguer v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983)), and the ALJ was entitled to draw the conclusion that plaintiff's nonexertional impairments would not be present but for plaintiff's substance abuse disorder. See Cage, 692 F.3d at 126-27 (finding that the "lack of a consultive opinion predicting [a plaintiff's] impairments in the absence of drug or alcohol abuse" is not necessary in order for the ALJ to render a finding consistent with DAA).

Other substantial evidence in the record supported the ALJ's determination and indicated that plaintiff was not in remission, as plaintiff argues. Plaintiff's treatment notes from Horizon and NCMH indicate that, when he abstained from alcohol and followed through with treatment, his mental status generally improved. His GAF score improved over time, to the point where it reflected only mild symptoms at the time of his successful completion of the Horizons

substance abuse program. Plaintiff's mental status examinations were repeatedly noted as essentially normal, and he reported to Dr. Gupta that his mental condition improved with medication. However, plaintiff demonstrated repeated relapses, receiving a DWI in November 2012 and testing positive for cocaine in May 2013, evidencing the fact that he was not in remission from substance abuse or chemical dependency. The record evidence that plaintiff improved while abstaining from substance abuse also substantially supported the ALJ's determination. See Cage, 692 F.3d at 126-27 (describing findings of improvement during periods of abstinence, and holding that these findings constituted substantial evidence supporting the ALJ's determination). Considering the record evidence, plaintiff did not meet his burden of establishing that his substance abuse was not a contributing factor material to the disability determination. See Cage, 692 F.3d at 123.

    **B.   Physical RFC**

Plaintiff contends that Dr. Balderman's opinion, to which the ALJ gave great weight, was vague and did not provide substantial evidence for the conclusion that plaintiff could perform light work. As noted above, Dr. Balderman found that plaintiff had monocular vision and that he would be mildly to moderately limited in kneeling and climbing due to left knee pain. Dr. Balderman did not state any findings with regard to plaintiff's ability to sit, stand, or walk.

The ALJ's physical RFC finding is supported by substantial evidence. Dr. Balderman's opinion, which noted left knee limitations, is fully consistent with plaintiff's medical treatment notes. There is no indication from the record that plaintiff had any physical limitations in sitting, standing, walking, or in any work-related function other than those noted by Dr. Balderman in his opinion. It is clear from the ALJ's decision that he based his physical RFC finding on all of the relevant evidence, and as he did not have a treating physician's opinion from which to draw, he was entitled to rely on Dr. Balderman's conclusions. See 20 C.F.R. §§ 416.927(c), 416.927(d)(2), 416.945, 416.946.

## VI.  Conclusion

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Doc. 12) is denied and the Commissioner's cross-motion (Doc. 18) is granted. The ALJ's finding that plaintiff was not disabled is supported by substantial evidence in the record, and accordingly, the Complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated:   October 6, 2015
         Rochester, New York.